UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GERALD MICHAEL KITSOS,                                    Docket No.:

                *Plaintiff,*

   -against-                                                              **COMPLAINT**

MEGA CONTRACTING GROUP, LLC,                       **PLAINTIFF DEMANDS**
HERCULES HANJIS & HERCULES ARGYRIOU,    **A TRIAL BY JURY**

                *Defendants.*
-------------------------------------------------------------------X

      Plaintiff Gerald Michael Kitsos, as and for his Complaint, all upon information and belief, respectfully alleges as follows:

## JURISDICTION AND VENUE

      1.    This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1332, in that Plaintiff's claims exceed the sum or value of $75,000, exclusive of interest and costs, and are between citizens of different states.

      2.    Venue is proper under 28 U.S.C §1391(b) because the events underlying this action occurred within the Eastern District of New York and because the Defendants' contacts with and principal place of business in this District, namely in the County of Queens.

## IDENTITY OF THE PARTIES

      3.    At all relevant times mentioned herein, Plaintiff Gerald Michael Kitsos ("Kitsos") was employed by Defendant Mega Contracting Group, LLC for 35 years, from July 1990 until June 3, 2025, when he was terminated in retaliation for his complaint of age discrimination.

      4.    Kitsos is a 63-year-old citizen of New Jersey and performed his services in person at Defendants' office in the County of Queens, City and State of New York.

5. Defendant Mega Contracting Group, LLC ("Mega") is a New York limited liability company that maintains its principal place of business in Astoria, Queens.

6. Mega is a full-service development, general contracting, and construction management firm that has provided services throughout the New York metropolitan area for more than three decades.

7. Defendant Hercules Hanjis ("Hanjis"), also known as "Laki," is a resident of the country of Greece and is the founder and majority owner of Mega.

8. Defendant Hercules Argyriou ("Argyriou") is a resident of Brooklyn, New York and is the Vice President of Mega.

9. There is complete diversity between the parties in this action brought under the New York City and State Human Rights Laws, in that Kitsos is a citizen of New Jersey and the Defendants are citizens of New York and Greece and the amount in controversy exceeds $75,000.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

10. Kitsos began his employment with Mega as a Project Manager in or about July 1990, when he was 27 years old, working at Mega's offices in Astoria, New York.

11. Mega was in its infancy at that time, as Kitsos was the company's first employee working alongside Hanjis.

12. Kitsos rose to serving as a Project Manager, a Senior Project Manager and a Chief Estimator, helping build Mega from the ground up.

13. For the next 35 years, Kitsos was an integral part of Mega's success, which included serving as a Project Manager, a Senior Project Manager, and a Chief Estimator for approximately 25 years and managing various large-scale development projects.

14. In or around 2005, Mega hired a group of recent graduates of Cooper Union, all of whom were men in their early 20s.

15. At that time, Hanjis said to Kitsos:

> **"You see these guys? They're the future of the company. We're going to build them up and lay back and let these guys do the work. We can't work like this all our lives, we're getting older."**

16. Between 2010 and 2015, two of those employees, both in their 30s, were promoted to Partners of Mega.

17. Although Kitsos had been employed by the company for approximately 20-25 years at that time and had achieved a level of mastery in the field – he was never promoted to Partner.

18. In or around April 2019, the three Partners of Mega, Hanjis, Argyriou and George Poulon ("Poulon"), removed Kitsos from his role managing projects.

19. Poulon told Kitsos to **"pass [his] knowledge down to the young people of the company"** and stated that Kitsos should spend time **"training the younger employees"** rather than continuing his prior project management role.

20. At that time, Kitsos was approximately 57 years of age.

21. The age discrimination Kitsos suffered at Mega came to a head on February 28, 2025, during a management retreat at the Killington Ski Resort.

22. Mega announced that they were promoting two employees in their 30s to Partner.

23. Upon information and belief, the two employees promoted on February 28, 2025 were members of a younger cohort hired in the early 2000s, whom Mega consistently sponsored for advancement notwithstanding their limited project management experience relative to Kitsos.

24. Despite all of his contribution to Mega, Kitsos, once again, was passed over for promotion to Partner in favor of younger employees.

25. Additionally, Hanjis' son Dimitri (late 30s) and Poulon gave a presentation about the history of Mega's origins, showing a photograph of Hanjis, Poulon and Argyriou graduating from college and saying that this photo represented the formation of Mega, completely omitting Kitsos who was integral to Mega's early success and its first employee.

26. Afterwards, Hanjis ran over to Kitsos for a hug, but Kitsos refused to hug him, went to his hotel room, and was so hurt and betrayed by the presentation and promotions that he only came out of his room one other time during the trip.

27. A few weeks later, Kitsos had a conversation with Hanjis about what happened at the retreat and asked Hanjis why all of the young employees at Mega were being made Partners rather than Kitsos, emphasizing that Mega had been promoting younger employees over him for many years.

28. Hanjis responded with words to the effect of:

> **"Mike, I need someone to make the call. George doesn't have it anymore. You don't have it anymore. You don't have the energy. Who am I going to get to do this?"**

29. On April 16, 2025, Kitsos emailed a formal complaint to the Mega Human Resources Department, in which he complained about Mega's age discrimination against him.

30. On April 24, 2025, Argyriou barged into Kitsos' office, accused Kitsos of improperly downloading work-related files without any explanation or conversation, demanded that Kitsos hand over his work phone, and suspended Kitsos with pay.

31. On April 25, 2025, Kitsos sent Argyriou a letter protesting his suspension, making clear that his behavior was in retaliation for Kitsos' age discrimination complaint and decision to retain an attorney to assert his rights.

32. Mega terminated Kitsos on June 3, 2025.

33. The reason that Mega gave for terminating Kitsos was that an internal investigation Mega had conducted "substantiated" that Kitsos had improperly downloaded work-related files.

34. This was a clear pretext, as Kitsos had been downloading work-related files for years so he could work on them at his home, and Mega never had an issue with his doing so.

35. It was only after Kitsos complained about age discrimination that Mega searched for a reason to terminate him and used the "issue" of his taking materials home to work on them as a shameful and false pretext for retaliation.

36. There was no basis for Mega's allegations against Kitsos or for its decision to terminate him, as Kitsos had been a loyal, dedicated employee for 35 years, since 1990, and did not suddenly decide to unlawfully appropriate Mega's documents.

37. Kitsos is now in the unenviable position of having to seek new employment at the age of 63 years and with the stigma of termination following 35 years of employment.

38. Kitsos reasonably fears that Mega's termination of Kitsos and the pretext it used for firing him may effectively end his career, so that Kitsos will suffer an irreparable and life-long injury as a result of Mega's unlawful retaliation against him.

39. As a result of Defendants' discriminatory conduct, Kitsos has suffered the adverse effects of age discrimination, which includes damages to the quality of his life, his self-esteem, self-respect and financial and emotional well-being because he was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Kitsos into the future.

40. Here, Defendants' conduct towards Kitsos shows that Defendants' acted with willful or wanton negligence, or recklessness, or a conscious disregard of Kitsos' rights under the New York City and State Human Rights Law, or that Defendants' unlawful actions against Kitsos

were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measure of relief to which Kitsos may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for Defendants' discriminatory conduct in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF
OF KITSOS AGAINST DEFENDANTS FOR AGE
DISCRIMINATION IN VIOLATION OF §8-107(1)(a)
OF THE NEW YORK CITY HUMAN RIGHTS LAW**

41. Kitsos repeats, realleges and incorporates in full paragraphs 1 through 42 of this Complaint, as though fully set forth at length herein.

42. At the time Kitsos was subjected to the discriminatory conduct complained of herein, he was in a protected category because of his age.

43. Throughout his employment, Kitsos was and is fully qualified for his position.

44. The Defendants treated Kitsos less well because of his age as confirmed by Hanjis telling Kitsos, **"Mike, I need someone to make the call. George doesn't have it anymore. You don't have it anymore. You don't have the energy. Who am I going to get to do this?"**; Mega passing over Kitsos as younger employees were promoted to Partner over the decades; and Mega ultimately terminating Kitsos on June 3, 2025 in response to his complaint of age discrimination.

45. The Defendants' aforementioned acts constitute unlawful discrimination against Kitsos in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) (referred to herein as "The New York City Human Rights Law"), which provides, inter alia that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived . . age . . . of any person . . . to discharge from employment such person

6

>or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

46. As a result of the Defendants' violations of the New York City Human Rights Law §8-107, the Defendants are liable to Kitsos pursuant §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

47. Kitsos has been caused to suffer injuries, including emotional distress and financial loss because of the Defendants' conduct in violation of Kitsos' human rights, all of which impacted his well-being and the quality of his life.

48. As a direct and proximate result of the Defendants' discriminatory conduct complained of herein, Kitsos has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and the emotional pain and suffering he has been caused to suffer and continues to suffer, all of which Kitsos alleges to be in the amount of Three Million Dollars ($3,000,000).

49. Here, the Defendants conduct towards Kitsos shows that Defendants acted with willful or wanton negligence, or recklessness, or a conscious disregard of Kitsos' rights under the New York City Human Rights Law, or that Defendants' unlawful actions against Kitsos were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measures of relief to which he may properly be entitled herein, the Defendants should additionally be required to pay punitive damages as punishment for Defendants' discriminatory conduct in the further amount of Four Million Dollars ($4,000,000), in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

50. Kitsos therefore, seeks judgment against the Defendants on this First Cause of Action, including, among other things, for compensatory damages in the sum of Three Million Dollars ($3,000,000), and the additional further sum of Four Million Dollars ($4,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Seven Million Dollars ($7,000,000).

**AS AND FOR A SECOND CAUSE OF ACTION ON
BEHALF OF KITSOS AGAINST DEFENDANTS
FOR AGE DISCRIMINATION IN VIOLATION OF
CHAPTER 18, ARTICLE 15 OF THE NEW YORK
STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §296(1)(a)**

51. Kitsos repeats, re-alleges and incorporates in full paragraphs 1 through 52 of this Complaint as though fully set forth at length herein.

52. At the time Kitsos was subjected to the discriminatory conduct complained of herein, he was in a protected category because of his age.

53. Throughout his employment, Kitsos was and is fully qualified for his position.

54. The Defendants treated Kitsos less well because of his age as confirmed by Hanjis telling Kitsos, "Mike, I need someone to make the call. George doesn't have it anymore. You don't have it anymore. You don't have the energy. Who am I going to get to do this?"; Mega passing over Kitsos as younger employees were promoted to Partner over the decades; and Mega ultimately terminating Kitsos on June 3, 2025 in response to his complaint of age discrimination.

55. The aforementioned acts of Defendants constitute unlawful age discrimination against Kitsos in violation of Chapter 18, Article 15 of the New York State Executive Law §296(1)(a) ("New York State Human Rights Law"), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice: (a) For an employer . . . because of the . . . age . . . of any individual . . . to discharge from employment such individual or to discriminate against such

8

individual in compensation or in terms, conditions or privileges of employment.

56. As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(1)(a), Kitsos was adversely affected in his employment, and did and continues to suffer in his life's normal pursuits, and he believes that the injuries inflicted upon him as a result of Defendants' discriminatory conduct did and will continue to have a detrimental effect upon the quality of his life and career, and will prevent him from functioning as he did prior to the conduct complained of herein, all of which Kitsos alleges to be in the amount of Three Million Dollars ($3,000,000).

57. Here, Defendants' conduct toward Kitsos shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Kitsos' rights under the New York State Human Rights Law, or that Defendants' unlawful actions against Kitsos were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measures of relief to which he may properly be entitled herein, the Defendants should additionally be required to pay punitive damages as punishment for Defendants' discriminatory conduct in the further amount of Four Million Dollars ($4,000,000), in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

58. Kitsos therefore, seeks judgment against the Defendants on this Second Cause of Action, including, among other things, for compensatory damages in the sum of Three Million Dollars ($3,000,000), and the additional further sum of Four Million Dollars ($4,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Seven Million Dollars ($7,000,000).

## AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF KITSOS AGAINST DEFENDANTS FOR RETALIATION IN VIOLATION OF §8-107(7) OF THE NEW YORK CITY HUMAN RIGHTS LAW

59. Kitsos repeats, re-alleges and incorporates in full paragraphs 1 through 60 this Complaint as though fully set forth at length herein.

60. When Kitsos protested Defendants' age discrimination, he was engaged in a protected activity under the New York City Human Rights Law of which the Defendants were aware.

61. As a proximate result of Kitsos engaging in protected activities under the New York City Human Rights Law, Kitsos suffered adverse employment action that would reasonably deter a victim of discrimination from engaging in protected activity, culminating in his unlawful termination on June 3, 2025.

62. The Defendants' aforementioned actions constitute unlawful retaliation against Kitsos in violation of §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

63. As a result of the Defendants' violations of the New York City Human Rights Law §8-107(7), the Defendants are liable to Kitsos pursuant to §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

64. Kitsos has been caused to suffer injuries resulting in financial loss, emotional suffering, and has been humiliated, demeaned and otherwise degraded because of the Defendants'

conduct in violation of Kitsos' human rights, all of which impacted his well-being and the quality of his life.

65. As a direct and proximate result of the Defendants' discriminatory conduct complained of herein, Kitsos has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and the emotional pain and suffering he has been caused to suffer and continues to suffer, all of which Kitsos alleges to be in the amount of Three Million Dollars ($3,000,000).

66. Here, the Defendants' conduct towards Kitsos shows that the Defendants acted with willful or wanton negligence, or recklessness, or a conscious disregard of Kitsos' rights under the New York State Human Rights Law, or that the Defendants' unlawful actions against Kitsos were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measures of relief to which he may properly be entitled herein, the Defendants should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Four Million Dollars ($4,000,000), in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

67. Kitsos, therefore, seeks judgment against the Defendants on this Third Cause of Action, including, among other things, for compensatory damages in the sum of Three Million Dollars ($3,000,000), and the additional further sum of Four Million Dollars ($4,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this Cause of Action, making a total claim of Seven Million Dollars ($7,000,000).

**AS AND FOR A FOURTH CAUSE OF ACTION ON
BEHALF OF KITSOS AGAINST DEFENDANTS FOR
RETALIATION IN VIOLATION OF THE NEW YORK
<u>STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §296(7)</u>**

68. Kitsos repeats, re-alleges and incorporates in full paragraphs 1 through 68 of this Complaint as though fully set forth at length herein.

69. Kitsos' complaint to Defendants asserting claims of discrimination was a protected activity of which Defendants were aware.

70. Kitsos' discrimination complaint was a proximate cause of his termination.

71. Defendants' unlawful conduct had a devastating impact on Kitsos' employment, his emotional well-being, the quality of his life and his life's normal pursuits, which injuries Kitsos believes will continue to cause him significant damage.

72. The aforementioned acts of Defendants constitute unlawful discriminatory retaliation against Kitsos in violation of the New York State Human Rights Law, Executive Law §296(7), which provides, inter alia, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

73. As a direct and proximate result of Defendants' violation of the New York State Human Rights Law §296(7), Kitsos was adversely affected in his employment, and did and continues to suffer in his life's normal pursuits, and he believes that the injuries inflicted upon him as a result of Defendants' retaliatory conduct did and will continue to have a devastating effect upon the quality of his life and career, and will prevent him from functioning as he did prior to the conduct complained of herein, all of which Kitsos alleges to be in the amount of Three Million Dollars ($3,000,000), as well as reasonable attorney's fees pursuant to §297(10), and pre-judgment interest and costs.

74. Here, Defendants' conduct towards Kitsos shows that they acted with willful or wanton negligence, malice, recklessness, or a conscious disregard of Kitsos' rights, or that their unlawful actions against Kitsos were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measure of relief to which he may properly be entitled herein, Defendants should also be required to pay punitive damages pursuant to §297(9) as punishment for their reprehensible conduct in the further amount of Four Million Dollars ($4,000,000) in order to deter Defendants and others similarly situated from such conduct in the future.

75. Kitsos, therefore, seeks judgment against Defendants on this Fourth Cause of Action, for, among other things, for compensatory damages in the sum of Three Million Dollars ($3,000,000), and the additional further sum of Four Million Dollars ($4,000,000) in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees pursuant to §297(10), making a total claim of Seven Million Dollars ($7,000,000).

**AS AND FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE, AGAINST HANJIS AND ARGYRIOU INDIVIDUALLY FOR AIDING & ABETTING DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NEW YORK CITY AND STATE HUMAN RIGHTS LAWS**

76. Kitsos repeats, re-alleges and incorporates in full paragraphs 1 through 76 of this Complaint, as though fully set forth at length herein.

77. Should Hanjis and Argyriou be determined to not be individually liable under Administrative Code §8-107(1)(a) and/or Executive Law §296(1)(a) for any reason, then Hanjis and Argyriou should be held personally liable for aiding, abetting and compelling the discrimination and retaliation against Kitsos, as more specifically detailed in the prior paragraphs of this Complaint, all of which are deemed a part hereof.

78. As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, Hanjis and Argyriou aided, abetted and compelled the discrimination and retaliation against Kitsos, so that they should be held personally liable for unlawful aiding and abetting discrimination and retaliation in violation of §8-107(6) of the New York City Human Rights Law and §296(6) of the New York State Human Rights Law, which states, *inter alia*:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

79. As a direct result of Hanjis and Argyriou's conduct, Kitsos has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects upon Kitsos' employment, career and life's normal pursuits. As a direct and proximate result of Hanjis' and Argyriou's conduct complained of herein, Kitsos has suffered damages, injuries and losses, both actual and prospective, which include financial loss, damage to his career and emotional pain and suffering, so that Kitsos seeks in this Fifth Cause of Action compensatory damages in the amount of Three Million Dollars ($3,000,000).

80. Here, Hanjis and Argyriou's conduct towards Kitsos shows that they acted with willful or wanton negligence, or recklessness, or a conscious disregard of Kitsos' rights under the New York City and State Human Rights Laws, or that their unlawful actions against Kitsos were so reckless as to amount to a disregard of Kitsos' rights, so that in addition to all the damages inflicted upon Kitsos and in addition to all the measure of relief to which Kitsos may properly be entitled herein, Hanjis and Argyriou should additionally be required to pay punitive damages as punishment for their discriminatory conduct in the further amount of Four Million ($4,000,000) Dollars, in order to deter Hanjis, Argyriou and others similarly situated from engaging in such conduct in the future.

81. Kitsos, therefore, seeks compensatory damages against Hanjis and Argyriou on this Fifth Cause of Action, including, among other things, the emotional harm inflicted upon him in the sum of Three Million ($3,000,000) Dollars, and an additional and further sum of Four Million ($4,000,000) Dollars for punitive damages, making a total of Seven Million ($7,000,000) Dollars in this cause of action, plus prejudgment interest, the costs of this action, as well as reasonable attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff Gerald Michael Kitsos demands judgment against all Defendants on each of the First, Second, Third and Fourth Causes of Action in the sum of Three Million Dollars ($3,000,000) in compensatory damages and the further and additional sum of Four Million Dollars ($4,000,000) in punitive damages, for a total of Seven Million Dollars ($7,000,000); and, in the alternative, against Defendants Hercules Hanjis And Hercules Argyriou on the Fifth Cause of Action in the sum of Three Million Dollars ($3,000,000) in compensatory damages and the further and additional sum of Four Million Dollars ($4,000,000) in punitive damages, for a total of Seven Million Dollars ($7,000,000); plus, on all Causes of Action, pre-judgment interest, the costs of this action and reasonable attorney's fees, and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER LLP**
*Attorneys for Plaintiff*

By: _____
BRIAN HELLER
ANALIESE SMITH
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565